```
           IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. CROIX

CLUB ST. CROIX HOMEOWNERS        )
ASSOCIATION, INC.,               )
                                 )
           Plaintiff,            )
                                 )    Civil No. 2003-181
      v.                         )
                                 )
SHELL OIL COMPANY, d/b/a SHELL   )
CHEMICAL CO.,                    )
                                 )
           Defendant.            )
_____)
```

**ATTORNEYS:**

**A. Jeffrey Weiss, Esq.**
St. Thomas, U.S.V.I.
      *For the Plaintiff.*

**Terrence Beuhler, Esq.**
Chicago, IL
      *For the Plaintiff.*

**Vincent A. Colianni, Esq.**
St. Croix, U.S.V.I.
      *For the Defendant.*

**Alden L. Atkins, Esq.**
Washington, D.C.
      *For the Defendant.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of the defendant, Shell Oil Company, d/b/a Shell Chemical Co. ("Shell"), to dismiss this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(2).

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND

Club St. Croix owns, operates and manages certain real property known as Club St. Croix, located on St. Croix, U.S. Virgin Islands. Shell is a corporation organized under Delaware law and has its principal place of business in Texas. Shell manufactured a plastic resin called polybutylene ("PB"), which it sold to pipe manufacturers and others involved in the building and plumbing businesses. The pipe manufacturers in turn made plumbing systems by combining PB with acetal, another plastic resin. These plumbing systems were installed in residences and multifamily buildings throughout the United States.

Club St. Croix alleges that Shell engaged in a conspiracy with other entities in the plumbing and building industries to market and sell PB in an effort to "corner the plumbing market." (Compl. ¶ 16.) This alleged conspiracy began as early as 1978 and involved a "strong, misleading promotional campaign, the use of Shell salesmen to obtain code approvals in areas experiencing significant population growth, followed by . . . 'blitzes' to develop the market for PB and PB plumbing systems throughout the country." (*Id.*) Club St. Croix alleges that Shell and its coconspirators knew as early as 1980 that PB plumbing systems were defectively designed but nevertheless continued their promotional campaign, knowing their representations to be "false and untrue." (*Id.* at ¶ 29.) Club St. Croix further alleges that

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 3

its own plumbing systems contain PB and have degraded, causing property damage.

Consequently, Club St. Croix filed a seven-count Complaint. Shell now moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2).

## II. DISCUSSION

"In deciding a motion to dismiss for lack of personal jurisdiction, [the Court] take[s] the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (internal citations omitted). The plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1981).

Under Virgin Islands law, to establish personal jurisdiction, Club St. Croix must demonstrate that the Court has jurisdiction over Shell both under the Virgin Islands long-arm statute and under the requirements of the Constitution. *Yusuf v. Adams*, Civ. No. 2003-76, 2004 U.S. Dist. LEXIS 27178, at *4-5 (D.V.I. Nov. 9, 2004); *see also Fin. Trust Co. v. Citibank, N.A.*, 268 F. Supp. 2d 561, 566 (D.V.I. 2003) (citing *Int'l Shoe v.*

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 4

*Washington*, 326 U.S. 310 (1945)).

As a threshold matter, Club St. Croix maintains that jurisdiction over Shell is proper by reference to a separate case brought in the Superior Court of the Virgin Islands[1] against Shell for claims similar to those in the action before this Court. Club St. Croix posits that in the Superior Court case "Shell . . . has never moved to dismiss for lack of 'personal jurisdiction,' and instead participated in extensive pretrial proceedings, and actively defended that case for over six years." (Pl.'s Resp. to Def.'s Mot. to Dismiss 10.) By consequence, Club St. Croix asserts that "Shell, as a matter of law, has long since waived its right to raise lack of personal jurisdiction as a defense." (*Id.*) That assertion is unfounded.

Lack of personal jurisdiction is a defense that may be waived by "failure [to] assert [it] seasonably." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939). Here, Club St. Croix does not argue, nor does the record reflect, that Shell's motion in the matter before this Court was not seasonably asserted.[2] Moreover, the cases on which Club St. Croix relies

---

[1] Club St. Croix refers to the Territorial Court of the Virgin Islands. Effective January 1, 2005, the name of the Territorial Court changed to the Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).

[2] The Complaint was entered in November, 2003. Shell's motion to dismiss - its first filing in this matter - was filed

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 5

provide little, if any, support for its waiver argument. In those cases, the courts held that the defense of lack of personal jurisdiction would be deemed waived where the defendant actively participated in the litigation without contesting jurisdiction. The deficiency in Club St. Croix's argument is that here, Shell did promptly contest this Court's jurisdiction. Consequently, Shell did not waive its right to raise the defense of lack of personal jurisdiction.[3] *See*, *e.g.*, *In re School Asbestos Litig.*, Civ. No. 83-0268, 1993 U.S. Dist. LEXIS 10686, at *31 (E.D. Pa. Aug. 2, 1993) (reviewing the record and finding that the defendant did not waive its personal jurisdiction challenge where

---

in January, 2004.

[3] Although not specifically articulated by Club St. Croix, the assertion that Shell is judicially estopped from contesting jurisdiction in this Court because of its conduct before the Superior Court would also be misguided. "When a party asserts a position inconsistent with a position taken in a previous proceeding, the doctrine of judicial estoppel is implicated." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967 (1988). Judicial estoppel looks to the relationship between the litigant and the court. It prevents a party from playing fast and loose with the court by using intentional self-contradiction as a means of obtaining unfair advantage. *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) (quotations and citations omitted). Here, there is no evidence that Shell is "playing fast and loose" with the Court. Indeed, Club St. Croix remarks that in the Superior Court case, Shell "did raise lack of jurisdiction as an affirmative defense." (Pl.'s Resp. to Def.'s Mot. to Dismiss 10.) Furthermore, Club St. Croix provides Shell's Answer in the Superior Court case. In its Answer, Shell asserts as its second affirmative defense that "[t]he Court lacks jurisdiction over the defendant, Shell." (*Id.*, Exh. 10 at 7.)

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 6

"[i]t moved seasonably and repetitively to dismiss for lack of personal jurisdiction before it was required to answer the complaint").

Given the absence of a waiver of a jurisdictional challenge, the Court will address whether the exercise of jurisdiction over Shell is proper. The Virgin Islands long-arm statute provides:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person[]
>   (1) transacting any business in this territory;
>   (2) contracting to supply services or things in this territory;
>   (3) causing tortious injury by an act or omission in this territory;
>   (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
>   (5) having an interest in, using, or possessing real property in this territory; or
>   (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.
>   (7) causing a woman to conceive a child, or conceiving or giving birth to a child; or
>   (8) abandoning a minor in this Territory.
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

V.I. CODE ANN. tit. 5. § 4903 ("section 4903").[4]

---

[4] The Virgin Islands long-arm statute has been interpreted as applying as widely as the Constitutional requirements permit. *See Urgent v. Tech. Assistance Bureau, Inc.*, 255 F. Supp. 2d 532 (D.V.I. 2003) ("[B]y adopting the Uniform Act, rather than

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 7

Club St. Croix specifically contends that subsections (1), (2) and (4) of the long-arm statute apply to Shell.

Club St. Croix's argument that subsection (4) of the long-arm statute applies to Shell does not pass muster. In support of this argument, Club St. Croix does no more than baldly assert that Shell's actions

> hav[e] caused tortious injury in the [Virgin Islands] by acts or omissions outside the [Virgin Islands], [and that Shell] regularly solicits business, engages in other persistent courses of conduct, and derives substantial revenue from goods used and consumed in the [Virgin Islands].

(Pl.'s Resp. to Def.'s Mot. to Dismiss 14.)

As evidenced by the long-arm statute, two elements must be present if personal jurisdiction is to rest on section 4903(a)(4). First, there must be an act or omission done outside the Virgin Islands, causing injury in the Virgin Islands. Second, the person causing the injury must either regularly do business in the Virgin Islands, engage in a persistent course of conduct in the Virgin Islands or derive substantial revenue from goods used or services rendered here. *See Noel v. Horn*, Civ. No. 82-44, 1982 U.S. Dist. LEXIS 18381, at *4 (D.V.I. June 29, 1982)

---

developing its own long-arm statute or adopting the long-arm statute of some other jurisdiction, the Virgin Islands' Legislature likely intended the reach of the Virgin Islands' long-arm statute to be coextensive with the exercise of personal jurisdiction permitted by the due process clause."); *see also Urgent v. Amazon Hospitality, Inc.*, Civ. No. 2002-115, 2004 U.S. Dist. LEXIS 12836, at *3 (D.V.I. July 9, 2004) (unpublished).

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 8

(quotations omitted). Club St. Croix alleges that it has suffered injury to its property, which is located in the Virgin Islands. Thus, the first element of subsection (4) is satisfied. *Cf. Dickson v. Hertz Corp.*, 559 F. Supp. 1169, 1173 (D.V.I. 1983) ("[J]urisdiction over the named defendant herein cannot be premised on section 4903(a)(4) because there was no 'tortious injury in this territory' as required under the sub-section.").

To satisfy the second element, Club St. Croix must establish that there is a "reasonable connection" between the Virgin Islands and Shell. To that end, Club St. Croix must show that Shell's "activities, including a course of conduct, soliciting business, and deriving revenue from goods being used in the territory, [are] sufficient cumulatively to establish a jurisdictional presence." *See Hendrickson v. Reg O Co.*, 657 F.2d 9, 12 (D.V.I. 1981). Those activities need have no relationship to the tortious action. Rather, it is the totality of a defendant's connections with the forum state that must be considered. *Id.* (quotations and citations omitted).

Here, Club St. Croix provides only scant evidence of Shell's course of conduct in the Virgin Islands. First, Club St. Croix contends that Shell "has previously transacted [PB] business in the [Virgin Islands]." (Pl.'s Resp. to Def.'s Mot. to Dismiss 13.) In support of this contention, Club St. Croix points to a Declaration by a Shell employee (the "Saum Declaration"). The

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 9

Saum Declaration, however, states that Shell "[n]ever transacted [PB] business in the Virgin Islands." (Saum Decl. ¶ 6, Dec. 11, 2003.)  The Declaration further states that while Shell sold PB resin to third-party manufacturers for inclusion in plumbing systems, "[n]one of those [PB] resin customers was located in the Virgin Islands[, and] no Shell representative ever visited the Virgin Islands to promote the sale of [PB] pipe or resin . . . ." (*Id.*)  Because the Saum Declaration specifically states that Shell has not solicited any business related to PB in the Virgin Islands, Club St. Croix's reliance on the Saum Declaration is misplaced.

Second, Club St. Croix provides the affidavit of a paralegal employed by Club St. Croix's counsel (the "Bentley Affidavit").[5] The Bentley Affidavit states that a particular store on St. Thomas "ha[s] a large number of Shell products for sale." (Bentley Aff. ¶ 3, Mar. 1, 2004.)  The Bentley Affidavit further lists several kinds of motor oil sold in that store, and provides photocopies of the labels on the motor oil containers.  The labels indicate that the motor oil is distributed by Shell Oil

---

[5] Club St. Croix's other evidence includes interoffice correspondence and marketing guides relating to the manufacture and sale of PB.  None of these exhibits, save for the affidavit discussed above, indicates how Shell is subject to this Court's jurisdiction under the long-arm statute.

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 10

Products US.[6]  Based on that evidence alone, Club St. Croix maintains that "Shell's solicitation and/or supplying of products other than the [PB] pipes and installation guides for the [PB] plumbing systems at issue *also gives rise to personal jurisdiction over Shell*." (Pl.'s Resp. to Def.'s Mot. to Dismiss 15) (emphasis in original).

Club St. Croix's reliance on the Bentley Affidavit is similarly misplaced.  The Bentley Affidavit establishes only that various kinds of motor oil produced by an entity whose precise relationship with the defendant in this action is undefined, were sold at one store on the particular day of the affiant's visit.  That evidence falls far short of establishing that a "sufficient nexus" exists between the Virgin Islands and Shell. *See* 13 Unif.L.Ann. § 1.03 at 468, *cited with approval in Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1058 (3d Cir. 1982); *see also Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003) (finding that the plaintiff's allegations did not meet the "high standard of a persistent course of conduct required" under the long-arm statute) (quotations omitted); *cf. Hendrickson*, 657 F.2d at 12 ("The record not only establishes that the defendant maintained contact with users of its products

---

[6] Shell asserts that the motor oil is distributed by Shell Oil Products US, which Shell describes as "a separate entity." (Def.'s Reply Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction 2.)

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 11

in the Virgin Islands through direct sales, but also that it solicited business by sending catalogues, price lists, and bulletins, and supplied technical advice by telephone on servicing its equipment in use on the Islands."). In sum, Club St. Croix's nearly verbatim recitation of subsection (4) of the long-arm statute is insufficient to defeat a motion to dismiss for lack of personal jurisdiction. *See*, *e.g.*, *Binder v. McVey*, Civ. No. 2005-137, 2007 U.S. Dist. LEXIS 84395, at *5 (D.V.I. Nov. 8, 2007) (finding that the plaintiffs had not met their burden where they failed to explain specifically how the long-arm statute reached the defendants); *Four Winds Plaza Corp. v. Caribbean Fire & Assocs.*, Civ. No. 2005-201, 2007 U.S. Dist. LEXIS 44920, at *19 (D.V.I. Apr. 18, 2007) (same). Consequently, subsection (4) of the long-arm statute does not apply to Shell.

In its effort to explain how subsections (1) and (2) of the long-arm statute reach Shell,[7] Club St. Croix again invokes the Saum Declaration and the Bentley Affidavit. For the reasons that subsection (4) of the long-arm statute does not apply, the Saum Declaration provides little, if any, support for the proposition that this Court has jurisdiction over Shell based on subsections (1) and (2) of the statute. Club St. Croix attempts to bolster

---

[7] Club St. Croix appears to collapse subsections (1) and (2) of the long-arm statute into one provision, and appears to present its arguments for both interchangeably.

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 12

this already lacking argument by arguing in general terms that Shell marketed and sold PB for use in plumbing systems, some of which were installed in the Virgin Islands. In making this argument, however, Club St. Croix merely reiterates a condensed form of the allegations in the Complaint. In short, Club St. Croix adduces no evidence that subsections (1) and (2) of the long-arm statute apply to Shell because of Shell's sales of PB.

    Second, Club St. Croix blithely contends that "Shell continues to this day to sell products in this territory." (Pl.'s Resp. to Def.'s Mot. to Dismiss 13.) In support of that contention, Club St. Croix appears to rely again on the Bentley Affidavit. The fatal flaw in that reliance, however, is that the long-arm statute requires that when jurisdiction is based on one of its provisions, the claim must arise from the conduct alleged in the complaint. *See* V.I. CODE ANN. tit. 5. § 4903(b); *see also Sevison v. Cruise Ship Tours*, Civ. No. 1996-57, 1997 U.S. Dist. LEXIS 12728, at *32 (D.V.I. Aug. 15, 1997) ("Even if [the defendant] has conducted business or contracted to supply services or things in this Territory, . . . these acts have nothing to do with any of plaintiffs' claims for relief. In other words, plaintiffs' claims do not 'arise from' any acts of [the defendant] that would arguably fit within one of the subsections of the Long Arm Statute."). Here, the gravamen of the Complaint springs from Shell's manufacture and sale of PB,

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 13

not motor oil. Consequently, that Shell or a related entity sold motor oil in the Virgin Islands is insufficient to establish personal jurisdiction over Shell for claims arising from Shell's sales of PB. *See, e.g., Dennie v. University of Pittsburgh School of Medicine*, 589 F. Supp. 348, 354 (D.V.I. 1984) ("[I]n order for these nonresident defendants to be amenable to suit in the Virgin Islands under the long arm statute, the cause of action must arise out of the basis for this Court's exercise of *in personam* jurisdiction."), *aff'd* 770 F.2d 1068 (3d Cir. 1985); *see also Time Share Vacation Club v. Atlantic Resorts, et al.*, 735 F.2d 61 (3d Cir. 1984) (applying Pennsylvania law).

Club St. Croix has failed to meet its burden of proof that this Court has personal jurisdiction over Shell under the Virgin Islands long-arm statute. *See, e.g., Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877, 880 (3d Cir. 1981) ("A defendant's challenge to the court's in personam jurisdiction imposes on the plaintiff the burden of coming forward with facts, by affidavit or otherwise, in support of personal jurisdiction.") (quotations and citation omitted), *aff'd* 456 U.S. 694 (1982). Therefore, the Court need not address whether jurisdiction over Shell conforms with the due process requirements of the Constitution.[8] *See, e.g., Four Winds Plaza*

---

[8] Ordinarily, once a plaintiff has established jurisdiction over the defendant under the Virgin Islands long-arm statute, she must also establish that jurisdiction conforms with the due

*Club St. Croix v. Shell Oil*
Civil No. 2003-181
Memorandum Opinion
Page 14

*Corp.*, 2007 U.S. Dist. LEXIS 44920, at *19-20; *cf. Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 (D.V.I. 2004).

    For the reasons stated above, Shell's motion to dismiss will be granted.  An appropriate order follows.


**Dated: November 30, 2007**

                                                  S\_____
                                                    **CURTIS V. GÓMEZ**
                                                        **Chief Judge**


copy:     Hon. Geoffrey W. Barnard
           A. Jeffrey Weiss, Esq.
           Terrence Beuhler, Esq.
           Vincent A. Colianni, Esq.
           Alden L. Atkins, Esq.
           Carol C. Jackson
           Lydia Trotman
           Claudette Donovan
           Olga Schneider
           Gregory F. Laufer

---

process requirements of the Constitution.  Due process requires that a non-resident defendant have minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Additionally, "subjecting the defendant to the court's jurisdiction [must] comport[] with 'traditional notions of fair play and substantial justice.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316).  In determining the sufficiency of the defendant's minimum contacts with the forum, "jurisdiction is proper if the defendant has taken 'action . . . purposefully directed toward the forum State.'" *Id.* at 370 (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion of O'Connor, J.)).